UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-24157-MC-HUCK

CITIGROUP GLOBAL MARKETS, INC.,
f/d/b/a SMITH BARNEY,

    Petitioner,

v.

MICHAEL BOCK,

    Respondent.
_____/

## ORDER CONFIRMING CITIGROUP GLOBAL MARKETS, INC.'S ARBITRATION AWARD

THIS MATTER comes before the Court on Petitioner Citigroup Global Markets, Inc.'s ("Citigroup") Application to Confirm Arbitration Award (D.E. No. 1) filed November 18, 2010, and Respondent Michael Bock's Motion to Vacate FINRA Dispute Resolution Award, Inc.'s Final Arbitration Award, *see* Case No. 10-81582, D.E. No.1-2.[1] Both Citigroup's Application and Bock's Motion relate to a June 4, 2010 arbitration award entered by the Financial Industry Regulatory Authority's (FINRA) Dispute Resolution Division. The Court has reviewed the parties' submissions, the relevant legal authorities, and is otherwise duly advised. For the reasons set forth below, Citigroup's Application is confirmed and Bock's Motion is denied.

**I.    INTRODUCTION**

The Federal Arbitration Act (FAA) outlines four narrow circumstances under which a federal court may vacate an arbitration panel's award. *See* 9 U.S.C. § 10(a). While each circumstance is different from the other, they share a common theme — that a disagreement on the merits of any of the panel's decisions is not a reason to vacate its award. Thus, while a federal court may disagree with the wisdom of one or all of the arbitration panel's rulings, the FAA requires that the court stay its hand unless the panel's error was one of misconduct, rather than an error of law. *See First Preservation Capital v. Smith Barney*, 939 F. Supp. 1559, 1563 (S.D. Fla. 1996)

---

[1] Citigroup's Application (D.E. No. 1) and Bock's Motion to Vacate (Case No. 10-81582, D.E. No.1-2) were consolidated on January 20, 2011, *see* D.E. No. 8 (granting Citigroup's Unopposed Motion to Consolidate).

1

("[c]ourts are generally prohibited from vacating an arbitration award on the basis of errors of law or interpretation") (citation omitted).

As Judge Edward Carnes aptly stated: "The laudatory goals of the FAA will be achieved only to the extent that courts ensure arbitration is an alternative to litigation, not an additional layer in a protracted contest." *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 904, 907 (11th Cir. 2006). Bock's Motion to Vacate — which focuses almost entirely on his disagreement with the arbitration panel's discovery rulings — however, treats arbitration as just that: an additional layer of a protracted litigation. The Court rejects Bock's invitation to engage in this act of judicial second-guessing and re-litigate discovery decisions that were properly before the arbitration panel.

## II.    BACKGROUND

Back in July 2004, Respondent Michael Bock was — and may still be — a highly regarded investment advisor. *See* Resp. in Opp. to Petr.'s Appl. to Confirm Arbitration Award 5 ("Resp.") (D.E. No. 11), filed February 4, 2011. Citigroup was interested in having Bock on its team and began recruiting him in earnest. *See id.* Citigroup touted its compliance division and significant lending platform — the latter being quite important to Bock, as his style of investing depended upon his firm having the ability to front large amounts of money. *See id.* Citigroup offered Bock a nice compensation package, too, which included a nine-year forgivable loan in the amount of $1,124,400. The loan was not, however, without strings attached; if Bock ended his employment for any reason, "the remaining balance becomes due and owing to Citigroup," Resp. 6 n.3.

Bock and Citigroup's employment relationship thrived for the first four years. Things turned for the worse, however, with the onset of the 2008 financial crisis. Like many of its peers, Citigroup's ability to finance investments was dramatically affected, as the wheels of the nation's credit markets ground to a halt. This was especially poor news for Bock's business interests. While Bock had previously been able to count on Citigroup to fund his clients' investments, this was no longer the case. His ability to generate business impinged, Bock resigned from Citigroup on April 2, 2009 and joined Merrill Lynch. Resp. 8. Bock's resignation triggered the promissory note's acceleration clause, meaning that Bock was obligated to pay Citigroup the outstanding loan balance ($624,666.68), plus interest. *See* Petr.'s Opp. to Mot. to Vacate Arbitration Award 6 ("Opp.") (D.E. No. 12), filed February 17, 2011.

When Bock refused to pay Citigroup the outstanding balance, Citigroup began arbitration proceedings against Bock by filing a Statement of Claim with the Financial Industry Regulatory Authority's (FINRA) Dispute Resolution Division. Opp. 6. Bock denied that he owed Citigroup any money and advanced a counterclaim, alleging that Citigroup was: (1) negligent in the course of Bock's hiring process; (2) unjustly enriched by the business Bock's clients brought to the firm; and (3) in breach of the covenant of good faith and fair dealing. *See id.* at 6-7.

After the pleadings were filed and arbitrators selected, the parties commenced discovery. The discovery proceedings can be summarized as follows:

- On October 29, 2009, Bock made 67 discovery requests; Citigroup produced a number of documents in response to this request, but also objected to a number of them, *see* Opp. 8;
- On January 13, 2010, Bock moved to compel discovery of the documents Citigroup objected to producing, and advanced an additional 116 document requests, *see id.*;
- On February 17, 2010, after holding a hearing on Bock's motion to compel, the Chairperson of the arbitration panel granted Bock's motion, *see id.*; *id.* Ex. F. (Chairperson's February 17,2010 Order);
- On April 12, 2010, the full arbitration panel reconsidered Bock's motion to compel, and significantly narrowed the Chairperson's February 17, 2010 discovery order, *see id.* at 9. The panel also ordered that Bock and Citigroup split the production costs 50/50, *see* Resp. 9.

Shortly after the panel issued its revised discovery order, Bock's counsel moved to postpone the final arbitration hearing, contending that in light of the thousands of emails Citigroup had yet to produce, he would not have sufficient time to prepare for the hearing. Resp. 14. The panel denied Bock's request in light of its finding that Citigroup was not required to produce the thousands of emails to which Bock claimed he was entitled.[2] *See* Opp. Ex. I. The panel did, however, require that any outstanding discovery Citigroup owed Bock be produced by May 14, 2010 — over two weeks before the final hearing would be held — or adverse inferences would

---

[2] At oral argument, Bock's counsel estimated that the requested documents exceeded one million pages.

3

be drawn against Citigroup.  *See id.*  Bock ultimately received 1600 pages of documents, but elected not to pay his share of the production costs for the additional documents he requested.[3]

After the three-day hearing held from June 1, 2010 through June 4, 2010, the panel: (1) held in favor of Citigroup on all its claims; (2) dismissed Bock's counterclaims; and (3) awarded Citigroup its attorney's fees and costs.  *See* Opp. 11.  For the reasons discussed below, Citigroup's Application to Confirm Arbitration Award is granted and Bock's Motion to Vacate is denied.

### III.  DISCUSSION

Before turning to the merits, the Court must first determine whether it should draw from the standards espoused in the Federal Arbitration Act, *see* 9 U.S.C. § 10(a), or Florida Arbitration Code, FLA. STAT. § 682.13.  While the FAA applies principally to determine the enforceability of a contractual arbitration provision where the contract involves interstate commerce, *see* 9 U.S.C. § 2, it too sets forth the governing standard where a court is asked to vacate an arbitration award, *see* 9 U.S.C. § 10(a).  In either case, the subject of the contractual arrangement must affect interstate commerce for the FAA's strictures to apply.  *See Perry v. Thomas*, 482 U.S. 483, 490 (1987) (the FAA "embodies Congress's intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause").

The Court concludes the FAA applies here.  As Bock describes his employment responsibilities, he served as an investment advisor and purchased securities listed on national exchanges.  *See* Resp. 5.  This activity — purchasing securities on national exchanges — is quintessentially an activity that affects interstate commerce.  The Court thus reviews Citigroup's Application under the standards espoused in 9 U.S.C. § 10(a).[4]

Under the FAA, a court *may* vacate an arbitration award if, among other reasons:

(1) there was evident partiality or corruption in the arbitration;

(2) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the

---

[3]  At oral argument, Bock's counsel conceded that he had ample time to review the documents that he received.

[4]  Citigroup had proposed that the FAA applied; Bock proposed that the Florida Arbitration Code applied.  While the Court concludes that the FAA governs the analysis whether the arbitration award should be confirmed, the outcome of the case would be the same under either analysis, for, as Citigroup correctly observes: "Florida's arbitration statute is modeled after the [FAA]," *RDC Golf of Florida I, Inc. v. Apostolicas*, 925 So. 2d 1082, 1091 (Fla. 5th Dist. Ct. App. 2006).

> controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (3) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

9 U.S.C. § 10(a). In determining whether any of these statutory criteria are met, the Court remains cognizant of the "FAA's presumption that arbitration awards will be confirmed," *Aviles v. Charles Schwab & Co., Inc.*, 435 Fed. App'x 824 (11th Cir. 2011), and that "federal courts should defer to the arbitrator's resolution of the dispute whenever possible," *Robbins v. Day*, 654 F.2d 679, 683 (11th Cir. 1992) (citation omitted); *see also id.* (courts should not "intrude unnecessarily into questions settled by arbitration, less the efficiency of the arbitration process be lost") (citation omitted).

Bock's first argument is that the arbitration panel was guilty of misconduct in refusing to grant his request to continue the final hearing for two months from the point in time at which he was "actually in receipt of all documents" Citigroup was allegedly ordered to produce. *See* Resp. 17; Opp. Ex. J ¶ 3 (Bock's Mot. to Continue Final H'rg Date).

The Court is not persuaded. Central to Bock's request for a continuance before the arbitration panel was his assertion that Citigroup had not yet produced thousands of emails it was required to turn over. *See* Opp. Ex. J. For its part, Citigroup denied that it owed him all these emails, and contended that only in the event that it did would a continuance be necessary, as "all document production has either been completed or will be completed shortly." *See* Opp. Ex. K (Citigroup's Resp. to Bock's Mot. to Continue). The Chairperson sided with Citigroup, observing that Bock's request for the thousands of emails was moot, as the panel had already granted Citigroup's objections to produce the emails. *See* Opp. Ex. I. The Chairperson did, however, make clear that the documents Citigroup had yet to produce must be turned over to Bock by May 14, 2010 in a timely manner — *i.e.*, at least two weeks before the final hearing — or adverse inferences would be imposed at trial. *See id.*

In light of the fact that Bock was in possession of the discovery Citigroup was required to produce a number of weeks before the final hearing, the Court cannot conclude that panel engaged in misconduct in failing to grant his continuance. As the Eleventh Circuit instructs, so long as there was "any reasonable basis" for failing to postpone the final hearing — for example, "the desire for an expeditious resolution," *Scott v. Prudential Securities, Inc.*, 141 F.3d 1007,

5

1016 (11th Cir. 1998) — the panel's award must remain undisturbed. And "a mere difference of opinion between the arbitrators and the moving part as to the correct resolution of a procedural problem will not support vacatur under section 10(a)(3)," *Scott*, 141 F.3d at 1016.

Bock's two remaining arguments are similarly misplaced. Bock alternatively contends that the panel clearly abused its power: (1) in denying his request for the production of the emails between Bock and management; and (2) requiring that the documents be produced on the condition that Bock pay half of all production costs. *See* Resp. 19. Contrary to Bock's contention, whether the panel erred in either of these respects is beside the point. In determining whether the panel abused its power, such that the award should be vacated, the scope of the Court's analysis is exceedingly narrow — an arbitration panel exceeds its powers only when it rules on a matter not submitted to them. *See, e.g.*, *Davis v. Prudential Securities, Inc.*, 59 F.3d 1186 (11th Cir. 1995) ("the attorneys' fees issue was not submitted to the arbitrators, and the arbitrators therefore exceeded their powers in deciding the issue") (citing 9 U.S.C. § 10(a)(4)); *see also, e.g.*, *Green v. Ameritech Corp.*, 200 F.3d 967 (6th Cir. 2000) (noting that § 10(a)(4) is violated when "arbitrators rule on issues not submitted to arbitration" or "when they fail to meet *their* obligations, as specified in a given contract, to the parties") (emphasis in original). Thus, because Bock's argument refers only to the merits of the panel's discovery decisions — not its power to make those decisions — the Court cannot find as a matter of law that the panel exceeded its powers.

Bock's remaining argument in support of vacating the panel's award is that "[t]here was evident partiality by the lead arbitrator," *i.e.*, the chairperson. *See* Resp. 3. But in order to vacate an arbitration award on the ground that the panel (or one of its members) was partial, "the alleged partiality must be 'direct, definite and capable of demonstration rather than remote, uncertain and speculative,'" *Lifecare Int'l, Inc. v. CD Medical, Inc.*, 68 F.3d 429, 433 (11th Cir. 1995) (citations omitted). "[T]he mere appearance of bias or partiality is not enough to set aside an arbitration award." *Id.* (citations omitted).[5] In light of Bock's utter failure to address how or whether the panel or any of its members was partial, as contemplated by the FAA, the Court finds no reason to vacate the panel's decision on this ground.

---

[5] The essence of Bock's "partiality" argument is that he disagrees with the panel's rulings relating to the production of documents and the request for a continuance. Even if both rulings were legally incorrect — which the Court is not a position to say that they were — such a merits-based argument cannot, under the FAA, demonstrate partiality.

### IV.   CONCLUSION

For the reasons stated above, it is hereby

ORDERED that Petitioner's Application to Confirm Arbitration Award is GRANTED.

It is hereby further

ORDERED that Respondent Michael Bock's Motion to Vacate Arbitration Award (D.E. No. 1-2, Case No. 10-81582-CIV), filed November 17, 2010, and consolidated with this case, *see* D.E. No. 8, filed January 20, 2011, is DENIED.

DONE AND ORDERED in Chambers, Miami, Florida, January 17, 2013.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All counsel of record